**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MONTVALE SURGICAL CENTER, LLC a/s/o D.C; IN-BALANCE HEALTH, LLC a/s/o D.C.; and HEALTH SWITCH, LLC a/s/o D.C., <br><br> Plaintiffs, <br><br> v. <br><br> HORIZON BLUE CROSS BLUE SHIELD OF NJ; ABC CORP. 1-10 (said names being fictitious and unknown entities), <br><br> Defendants. | CIVIL ACTION NO.: 12-3995 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT**

**CONNELL FOLEY LLP**
*Attorneys for Defendant*
*Horizon Blue Cross Blue Shield of New Jersey*
Liberty View
457 Haddonfield Rd., Ste. 230
Cherry Hill, New Jersey 08002
(856) 317-7100

*Of Counsel*:
Edward S. Wardell, Esquire

*On the Brief*:
Matthew A. Baker, Esquire

2814884-01

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ...................................................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ..................................2

    A.   The Parties ..................................................................................................2

    B.   The Plaintiff Providers..................................................................................3

    C.   The Applicable ERISA-Governed Employee Benefits Plan ..........................3

    D.   Horizon Properly Denied Benefits for MUAs under the Terms of the
Plan ...............................................................................................................5

        1.   Horizon Properly Denied Plaintiffs' Claim for Services................................5

        2.   Horizon Properly Determined Plaintiffs Appeals for the Denial of Benefits..............5

    E.   Plaintiff's Claim for Benefits Under the Plan ...............................................6

LEGAL ARGUMENT ...........................................................................................7

    A.   The Summary Judgment Standard................................................................7

    B.   Horizon's Denial of Benefits was not Arbitrary and Capricious....................7

    C.   ERISA Completely and Expressly Preempts Plaintiff's State Law
Claims............................................................................................................11

        1.   Section 502(a) of ERISA Completely Preempts Plaintiff's State Law Claims.........12

        2.   Section 514(a) of ERISA Expressly Preempts Plaintiff's State Law Claims............12

    D.   Horizon is Entitled to Attorney's Fees and Costs under ERISA ....................13

CONCLUSION ......................................................................................................15

i

## TABLE OF AUTHORITIES

*Cases*

Aetna Health, Inc. v. Davila, 542 U.S. 200 (2004) ........................................................12

Advanced Rehab, LLC v. Unitedhealthgroup, Inc., 2012 U.S. APP LEXIS
    20050 (3d Cir. September 25, 2012) .................................................1, 9, 10, 11, 13

Celotrex Corp. v. Catrett, 477 U.S. 316 (1986).............................................................7

Estate of Schwing v. The Lilly Health Plan, 562 F.3d 522 (3d Cir. 2009) ....................7

FMC Corp. v. Holliday, 498 U.S. 52 (1990) ................................................................12

Gambino v. Anrouk, 232 Fed. Appx. 140 (3d Cir. 2007) ...........................................7, 8

Howley v. Mellon Fin. Corp., 625 F.3d 788 (3d Cir. 2010)............................................8

Kelso v. General American Life Ins. Co., 967 F.2d 388 (10th Cir. 1992) ....................13

Marciniak v. Prudential Ins. Co. of Am., 184 Fed. Appx. 266 (3d Cir.
    2006).....................................................................................................................8

McCall v. Metropolitan Life Insurance Company, 956 F. Supp. 1172
    (D.N.J. 1996) ........................................................................................................7

McLeod v. Hartford Life and Acc. Ins. Co., 372 F.3d 618 (3d Cir. 2004) ....................8

McPherson v. Employees' Pension Plan of Am. Re-Insurance Co., 33 F.3d
    253 (3d Cir. 1994) ...............................................................................................13

Metz v. United Counties Bancorp., 61 F.Supp.2d 364 (D.N.J. 1999)...........................12

Moats v. United Mine Workers of American Health and Retirement
    Funds, 981 F.2d 685 (3d Cir. 1992) ....................................................................8

Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987) .....................................................12

Pryzbowski v. U.S. Healthcare, 245 F.3d 266 (3d Cir. 2001)................................11, 12

Shapiro v. Metropolitan Life Ins. Co., 2010 WL 1779392 (D.N.J. 2010) .....................8

***Other Authorities***

29 U.S.C. § 1001 et seq. ..................................................................................................1, 2

N.J.S.A. 17:48E-1 to -48 ..................................................................................................1

iii

## INTRODUCTION

Plaintiffs Montvale Surgical Center, In-Balance Health, LLC and Health Switch, LLC brought this action against Defendant Horizon Blue Cross Blue Shield of New Jersey ("Horizon"), as the alleged assignee of D.C., to recover benefits for spinal manipulations under anesthesia rendered to D.C. by two chiropractors from March 30, 2010, through April 1, 2010. D.C. received health benefits through an employee health benefit plan sponsored by Escandon, Fernicola, Anderson and Covelli, LLC, which is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA").  Horizon properly denied benefits because it found, under the terms of the plan, that the services rendered were "experimental and investigational" and not medically necessary services.

By this Motion, Defendant Horizon moves for summary judgment because Plaintiffs cannot show that Horizon's benefit determination was "arbitrary and capricious" under the plan. Plaintiffs claim that MUAs are not experimental and investigation and instead are medically necessary is based on the premise that "there exists AMA-CPT codes that indicate that MUA treatment is not investigational or experimental, as well as nationally accepted criteria for practicing MUA in selected patients."   The Third Circuit recently rejected these precise arguments in <u>Advanced Rehab, LLC v. Unitedhealthgroup, Inc.</u>, a case in which out of-network providers sought to bring a class action against health insurers for routinely denying MUAs. The Third Circuit affirmed the District Court's dismissal of a complaint with prejudice because "a mere CPT code is not enough to establish a plausible entitlement to relief."

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

**A.   The Parties**

Horizon is a not-for-profit health service corporation established under the Health Service Corporation Act, N.J.S.A. 17:48E-1 to -48, and is authorized to transact business in the State of New Jersey, with its principal place of business located at Three Penn Plaza, Newark, New Jersey. (Notice of Removal, ¶ 3). Horizon, among other things, provides health benefits and administers benefits for participants and beneficiaries of employee health benefit plans governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"). (Notice of Removal, ¶ 3).

Horizon, in its role as an insurer and administrator, publishes medical policies to assist in administering health benefits. Horizon's medical policies are available to all members and providers, and provide general information applicable to the administration of health benefits that Horizon insures or administers[1]. Horizon's medical policies have been developed by Horizon's medical policy committee consistent with generally accepted standards of medical practice, and reflect Horizon's view of what services are deemed to be medically necessary or experimental and investigational in nature.

Horizon publishes a specific policy which governs benefits for manipulation under anesthesia. Horizon Medical Policy #079 states that "spinal manipulation under anesthesia (MUA) is considered ***investigational*** for the treatment of pain syndromes of musculoskeletal origin including, but are not limited to, acute and effective treatment for pain syndromes of musculoskeletal origin." (emphasis in original.). Medical Policy #079 explains "there is a lack of evidence form available published literature that spinal manipulation under anesthesia has

---

[1] Horizon's medical policies are available to the general public via https://services5.horizon-bcbsnj.com/eprise/main/horizon/tsnj/tsweb/Medical_Policies_Guidelines.html#medical_policies. Both general information pertaining to these policies, as well as the policies themselves are available at this webpage.

2

been established as safe and effective for treatment of pain symptoms of musculoskeletal origin."
Medical Policy #079 has cites to numerous studies and references to support its findings.

**B.      The Plaintiff Providers**

Plaintiff Montvale Surgical Center ("MSC") is an outpatient Ambulatory Surgery Center
(ASC) where physicians perform minimally invasive pain management and podiatry procedures.
(Complaint, ¶ 1).  Plaintiffs In-Balance Health ("In-Balance") and Health Switch, LLC ("Health
Switch") are chiropractic centers that provided various medical services at MSC, including
manipulations under anesthesia, to subscribers enrolled in the healthcare plans of Horizon.
(Complaint, ¶¶ 2 & 3).

Each of the Plaintiffs is an "out-of-network" medical provider that does not have a
contract with Horizon (Complaint, ¶¶ 1 to 3) and brings this action as an alleged assignee of D.C.
(Complaint, ¶ 7)  D.C. was a participant in an employee health benefit plan established by her
employer, Escandon, Fernicola, Anderson and Covelli, LLC, and insured by Horizon.  (NOR, ¶
1).

**C.      The Applicable ERISA-Governed Employee Benefits Plan**

D.C. receives health benefits from her employer, Escandon, Fernicola, Anderson and
Covelli, LLC, through an employee benefit plan governed by ERISA (the "Plan").  (Attached
hereto as Exhibit "A" are the relevant portions of the Plan).  Under the terms of the Plan,
Horizon holds discretionary authority and "the sole right to make a decision or determination.
The decision will be applied in a reasonable and non-discriminatory manner."  (Exhibit "A" pp.
17).

The Plan excludes from benefits those services considered "experimental and
investigational."  (Exhibit "A" pp. 75).  Experimental or investigational means any service or
supply that "Horizon BCBSNJ determines . . . is not of proven benefit for the particular

diagnosis or treatment of a particular condition; or not generally recognized by the medical community as effective or appropriate for the particular diagnosis or treatment of a particular condition ... ."  (Id. at pp. 18).  Horizon uses a number of factors to determine if a service is "experimental and investigational," including but not limited to:

> b.  Conclusive evidence from the published peer-reviewed medical literature must exist that the technology has a definite positive effect on health outcomes; such evidence must include well designed investigations that have been reproduced by non affiliated authoritative sources, with measurable results, backed up by the positive endorsements of national medical bodies or panels regarding scientific efficacy and rationale;
>
> c.  Demonstrated evidence as reflected in the published peer-reviewed medical literature must exist that over time the technology leads to improvement in health outcomes, i.e., the beneficial effects outweigh any harmful effects;
>
> d.  Proof as reflected in the published peer-reviewed medical literature must exist that the technology is at least as effective in improving health outcomes as established technology, or is usable in appropriate clinical contexts in which established technology is not employable;
>
> e.  Proof as reflected in the published peer reviewed medical literature must exist that improvements in health outcomes; as defined in item c. above, is possible in standard conditions of medical practice, outside clinical investigatory settings.

(Id. at. 18-19 ).

The Plan only provides benefits for "medically necessary and appropriate" services. (Exhibit "A" pp. 76).  "Medically necessary and appropriate" means that a service or supply is provided by a recognized health care Provider and Horizon BCBSNJ determines in its discretion is:

> necessary for the symptoms and diagnosis or treatment of the condition, Illness or Injury; provided for the diagnosis, or the direct care and treatment, of the condition, Illness or Injury; in accordance with generally accepted medical practice; not for the convenience of a Covered Person; the most appropriate level of

4

medical care the Covered Person needs; and furnished within the framework of generally accepted methods of medical management currently used in the United States.

(Exhibit "A" pp. 21-22). The Plan specifically states "the fact that an attending Practitioner prescribes, orders, recommends or approves the care, or the length of time care is received, does not make the services Medically Necessary and Appropriate." (Exhibit "A" pp. 22).

**D.      Horizon Properly Denied Benefits for MUAs under the Terms of the Plan**

**1.      Horizon Properly Denied Plaintiffs' Claim for Services**

Plaintiffs seek to recover payments for manipulations under anesthesia provided to D.C. from March 30, 2010, through April 1, 2010. Horizon denied reimbursement for the MUA services at issue on the basis that "this service is considered an experimental procedure, it is ineligible for payment." (Attached hereto as Exhibit "B" is the Explanation of Benefits form for the services at issue).

**2.      Horizon Properly Determined Plaintiffs Appeals for the Denial of Benefits[2]**

Plaintiffs first submitted an appeal to Horizon on or about July 23, 2010. (Attached hereto as Exhibit "C" is the appeal dated 07/23/2010). The appeal was made by Precision Billing on behalf of Plaintiff In-Balance. (Id.) The appeal simply stated "enclosed you will find claim forms that are being resubmitted as an appeal for processing. These claims are not duplicate. The enclosed are: sent with progress notes to establish medical necessity." (Id.) Horizon responded to this appeal on or about November 16, 2010, upholding its original determination. (Attached hereto as Exhibit "D" is Horizon's appeal response dated 11/16/2010).

---

[2] Attached hereto as Exhibit "J" is the Certification of Catherine Benitez which details the Appeals that were filed on behalf of the Plaintiffs and Horizon's tracking of the same.

5

Horizon's response explicitly stated "the manipulation of any portion of the spine is investigational." (Id.)

On or about January 26, 2011, Plaintiffs submitted another appeal to Horizon. (Attached hereto as Exhibit "E" is the appeal dated 11/26/2011). This appeal was made by Precision Billing on behalf of Plaintiff Health Switch. (Id.) The appeal claims that "Spinal Manipulation under anesthesia and all other manipulations under anesthesia or [sic] not experimental and investigational." (Id.)

Horizon responded to this appeal on or about June 8, 2011, upholding the denial. (Attached hereto as Exhibit "F" is Horizon's appeal response dated 06/08/2011). The appeal decision stated "CPT code 22505 is denied for all dates of service. Per medical policy #079. Manipulation of the spine under anesthesia is investigational. Your plan only provides coverage for services by us deemed to be medically necessary and appropriate." (Id.)

**E.   Plaintiff's Claim for Benefits Under the Plan**

Plaintiffs filed a Complaint against Horizon seeking payment for manipulations under anesthesia purportedly rendered to D.C. on March 30, 2010 through April 1, 2010. Payment for these services was denied as the services were deemed experimental and investigational. (Complaint ¶ 15). Plaintiffs contend that "there exists AMA-CPT codes that indicate that MUA treatment is not investigational or experimental, as well as nationally accepted criteria for practicing MUA on selected patients." (Id.). Plaintiffs seek increased reimbursement for these services in the amount of $39,500. (Complaint ¶ 12). In addition to its claim for benefits under the Plan, Plaintiffs bring various state law claims for breach of contract, promissory estoppel and misrepresentation based on Horizon's denial of benefits. (Complaint Counts II through IV).

6

## LEGAL ARGUMENT

### A.      The Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."  Although a Court must view the evidence in the light most favorable to the non-moving party, Rule 56(c) requires the entry of summary judgment against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case.  See McCall v. Metropolitan Life Insurance Company, 956 F. Supp. 1172, 1179-80 (D.N.J. 1996).  When, as in this case, the Defendant shows "that there is an absence of evidence to support [the plaintiff's] case," the plaintiff must produce sufficient evidence to support its claims.  Celotex Corp. v. Catrett, 477 US 316 (1986); See McCall v. Metropolitan Life Ins. Co., 956 F.Supp. at 1172, 1180 (D.N.J. 1996)..

In this case, Horizon is entitled to summary judgment because Plaintiffs cannot establish that Horizon acted arbitrarily and capriciously in denying benefits for manipulations under anesthesia.  Horizon properly determined that the services were experimental and investigational based upon the applicable plan language, its medical policies, and on the administrative record reviewed on appeal.  Applying fundamental ERISA principles to the facts fatally undermines Plaintiffs' claims against Horizon.

### B.      Horizon's Denial of Benefits was not Arbitrary and Capricious

"Courts reviewing the decisions of ERISA plan administrators or fiduciaries in civil enforcement actions … should apply a deferential abuse of discretion standard of review across the board[.]"  Estate of Schwing v. The Lilly Health Plan, 562 F.3d 522, 525 (3d Cir. 2009).  Under this standard, courts may only overturn a plan administrator's denial of coverage if "it is without reason, unsupported by substantial evidence or erroneous as a matter of law."  Gambino

2814884-01

v. Anrouk, 232 Fed. Appx. 140, 145 (3d Cir. 2007)(quoting McLeod v. Hartford Life and Acc. Ins. Co., 372 F.3d 618, 623 (3d Cir. 2004)).  Where the claim administrator's actions were based upon the clear language of the policy, the actions were not "arbitrary or capricious" as a matter of law and the court must defer to the Claim Administrator.  Shapiro v. Metropolitan Life Ins. Co., 2010 WL 1779392 (D.N.J. 2010)(Pisano, J.)(Attached hereto as Exhibit "G" is a copy of the unpublished Shapiro opinion).  Furthermore, "[t]he Court may not substitute its own judgment as to the interpretation of the plan where this heightened standard is deemed appropriate."  Id. at *4-5 (citing Moats v. United Mine Workers of American Health and Retirement Funds, 981 F.2d 685, 687-88 (3d Cir. 1992)).

A court reviewing an ERISA plan administrator's coverage decision must look only to the evidence before the administrator at the time the decision was made.  Howley v. Mellon Fin. Corp., 625 F.3d 788, 793 (3d Cir. 2010); Marciniak v. Prudential Ins. Co. of Am., 184 Fed. Appx. 266, 269 (3d Cir. 2006).  Only the materials considered by the administrator are relevant to the analysis of whether the decision rendered was or was not "arbitrary and capricious."  Howley, 625 F.3d at 793.

In this case, a review of the administrative record show Horizon affirmed its initial determination in two (2) appeals based on information provided by the Plaintiffs, the terms of the Plan and the applicable medical policy bulletins.  (Exhibit "D"; Exhibit "F").  Horizons responses specifically state the CPT codes submitted are deemed experimental and investigational.  Horizon's response dated November 16, 2010 specifically states "the manipulation of any portion of the spine is investigational." (Exhibit "D").  Furthermore, Horizon's response dated June 8, 2011 states "per medical policy #079.  Manipulation of the spine under anesthesia is investigational." (Exhibit "F").  This response clearly references

8

Horizon's medical policy #079.   This medical policy states that MUA services are deemed experimental and investigation and gives detailed reasoning as to the underlying rational. (Attached hereto as Exhibit "H" is Horizon's medical policy #079).   Additionally, this policy gives sixteen (16) references on which the determination is based.   (Id.).   It is therefore undisputed that Horizon's determination was not "arbitrary and capricious"

In submitting their appeals to Horizon, Plaintiffs relied on overly broad, vague assertions that the services at issue were neither experimental nor investigational and instead were medically necessary and should have been covered under the terms of the Plan.  Plaintiffs' entire appeal is premised on the fact that MUAs are in the "AMA CPT codebook or reimbursable procedures." (Exhibit "E").   Plaintiffs contend that "in order for a procedure to be included in the AMA CPT codebook of reimbursable procedures, it must first have undergone clinical validation by being used by same or similar practitioners for the same or similar conditions." (Id.).  Plaintiffs then simply submitted medical records and operative reports in an attempt to get Horizon to reconsider its original denial.  (Id.).

The information submitted by Plaintiffs on appeal, namely inclusion in the AMA CPT codebook, is woefully inadequate to illustrate that Horizon's determination was "arbitrary and capricious."  The Third Circuit recently affirmed the District Court of New Jersey's dismissal of a complaint nearly identical to that at issue in this action.  In that case, Advanced Rehab, LLC v. Unitedhealthgroup, Inc., a number of out-of-network providers sought to bring a class action complaint against United Healthgroup, Inc. for routinely denying reimbursement for manipulations under anesthesia on the basis that the treatment was considered "experimental and investigational." 2012 U.S. App. LEXIS 20050 (3d Cir. September 25, 2012). (Attached hereto

9

as Exhibit "I" is a copy of the unpublished <u>Advanced Rehab</u> opinion)[3].  All four (4) of the plans at issue covered only treatment that United Healthgroup deemed "medically necessary" and excluded from coverage procedures that were considered experimental, investigational, or unproven. <u>Id.</u> at *3.

The Third Circuit found that the complaint failed to state a plausible claim for relief.  <u>Id.</u> The complaint contained no facts suggesting that MUA treatment was the most appropriate level of service that could safely be supplied in the given circumstances. <u>Id.</u>  The complaint only cited the AMA's listing of MUA procedure under a Category 1 CPT code to lend weight to the plausibility of their claims.  <u>Id.</u> at *9-10.  The Third Circuit stated "a mere CPT code is not enough to establish a plausible entitlement to relief." <u>Id.</u> at 10.  As plaintiff's failed to demonstrate that the treatment plausibly would be considered safe and effective for the individual patients in the case, the complaint was fatally flawed.  The Third Circuit found that conclusory allegations that MUA were "medically necessary" were not enough to defeat a motion to dismiss. <u>Id.</u> at *13.

Plaintiffs' claims in this case are nearly identical to those asserted in <u>Advanced Rehab</u>. In their appeals to Horizon, Plaintiffs refer to the existence of the same AMA-CPT codes which were found insufficient to sustain a cause of action in <u>Advanced Rehab</u>.  As the Third Circuit explained:

> Plaintiffs cite only the AMA's listing of MUA procedures under a Category 1 CPT code, which Plaintiffs assert "may not be dispositive of the appropriateness of MUA procedures here, [but] certainly, at a minimum, lends weight to the plausibility of Plaintiffs' claims."  But a mere CPT code is not enough to establish a plausible entitlement to relief.   Indeed, in its

___

[3] The <u>Advanced Rehab</u> case is "non-precedential."  However, the case is certainly persuasive and provides guidance in this matter, as the claims are almost identical.  Additionally, in Advanced Rehab the case was dismissing based only on the pleadings, while in this matter Horizon has shown that, in addition to the claims lacking merit, the decision reached on appeal was neither arbitrary or capricious.

> introduction to the Codebook, the AMA warns that "[i]nclusion in
> the . . . codebook does not represent endorsement . . . of any
> particular diagnostic or therapeutic procedure." The Introduction
> also states that "inclusion or exclusion of a procedure does not
> imply any health insurance coverage or reimbursement policy."
> And even if a CPT code from just one organization were enough to
> suggest the MUA treatment is consistent with national standards,
> Plaintiffs have not demonstrated that such treatment plausibly
> would be considered safe and effective for treating the individual
> patients in this case. Without such an individualized assessment,
> the complaint is fatally flawed.

(Advanced Rehab at *7-8).

Accordingly, this information cannot be reasonably construed as sufficient to overcome Horizon's benefit determination and show that Horizon's denial was arbitrary and capricious. Plaintiff cannot show that Horizon acted arbitrarily and capriciously and therefore Horizon is entitled to summary judgment.

## C.    ERISA Completely and Expressly Preempts Plaintiff's State Law Claims

Plaintiffs' state law claims arising from Horizon's denial of benefits fails as a matter of law because they are preempted by ERISA. ERISA contains two statutory provisions which preempt state law causes of action. The first of ERISA's two preemption provisions, Section 502(a) of ERISA, 29 U.S.C. §1132(a), sets forth a comprehensive civil enforcement scheme which forecloses state law claims that seek to supplement or supplant its remedies. Any claim that falls within the scope of Section 502(a) is completely preempted. Pryzbowski v. U.S. Healthcare, 245 F.3d 266, 271-72 (3d Cir. 2001).

In order to maintain the integrity of its exclusive regulatory scheme, ERISA also contains an express preemption clause. Section 514(a) of ERISA, 29 U.S.C. §1144(a), preempts "any and all state laws" that "relate to any employee benefit plan." Although not without limits, the Supreme Court has repeatedly found that the express preemption provisions of Section 514(a) of

ERISA are deliberately expansive.  Pilot Life Ins. Co. v. Deadeaux, 481 U.S. 41, 46 (1987). "[ERISA's] pre-emption clause is conspicuous for its breadth.  It establishes an area of federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA."  FMC Corp. v. Holliday, 498 U.S. 52, 58 (1990).

### 1.    Section 502(a) of ERISA Completely Preempts Plaintiff's State Law Claims

Section 502(a) of ERISA completely preempts Plaintiffs' state law claims against Defendants because it improperly seeks to duplicate and supplement the exclusive remedies available under ERISA.  Under Section 502(a), "any state law cause of action that duplicates, supplements or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted."  Davila, 542 U.S. at 209.  For this reason, any claim that "challenges the administration of or eligibility for benefits" is completely preempted and must be dismissed."  Pryzbowski, 425 F.3d at 273.

In this case, Plaintiffs' state law claims for breach of contract, promissory estoppel, negligent misrepresentation and unjust enrichment are based on the allegation that Defendants failed to pay benefits for manipulations under anesthesia rendered to D.C.  Because these state law claims seek to recover benefits allegedly due enter the ERISA-governed employee health benefit plan, they are completely preempted.  Aetna Health, Inc. v. Davila, 542 U.S. 200, 209 (2004)..

### 2.    Section 514(a) of ERISA Expressly Preempts Plaintiff's State Law Claims

Section 514(a) of ERISA, 29 U.S.C. §1144(a), expressly preempts any state law that relates to an employee benefit plan.  One primary purpose of this provision is to eliminate the risk of conflicting and inconsistent state regulation of employee benefit plans.  Metz v. United Counties Bancorp., 61 F.Supp.2d 364, 381(D.N.J. 1999).  For this reason, courts have repeatedly

held that Section 514(a) preempts state law claims that an insurer misrepresented the amount or availability of benefits under an employee benefit plan. See, e.g. Metz, 61 F.Supp.2d at 381; Kelso v. General American Life Ins. Co., 967 F.2d 388, 390-91 (10th Cir. 1992). Because Plaintiffs' claims are based on the alleged denial of payment of benefits under the plan, they once again involve the administration of benefits and relate to the Plan. Indeed, Plaintiffs' claims pose the precise risk of inconsistent state regulation that Section 514(a) is designed to prevent. If claims like those pleaded by the Plaintiffs are allowed to stand, a provider could bring a state court action for damages any time a benefit plan denied coverage or reduced benefits because the services were not otherwise covered under the terms of a plan.

**D.    Horizon is Entitled to Attorney's Fees and Costs under ERISA**

ERISA allows a court to grant "reasonable attorney's fee[s] and costs of [an] action to either party." 29 U.S.C. 1132(g). This statutory language grants a court hearing a claim governed by ERISA with discretion to award any party, including the insurer, its attorney's fees and costs. McPherson v. Employees' Pension Plan of Am. Re-Insurance Co., 33 F.3d 253 (3d Cir. 1994). In exercising its discretion, the Court may considering the following five factors: (1) the offending parties culpability or bad faith; (2) the ability of the offending parties to satisfy an award of attorneys' fees; (3) the deterrent effect of an award of attorneys' fees against the offending parties; (4) the benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' position. Id. at 254.

In this case, Horizon is entitled to attorney's fees and costs associated with this litigation because the Plaintiffs were made aware of the Advanced Rehab decision and therefore knew they had no colorable claim against Horizon. Despite being given written notice of Horizon's intent to file this motion, along with a copy of the Advanced Rehab decision, Plaintiffs willingly chose to continue this litigation. It is clear that Plaintiffs' claims are not warranted by existing law and

13

are therefore frivolous, as they are essentially the exact claims dismissed in the <u>Advanced Rehab</u>

matter.  Because Plaintiffs knew of should have known that they had no colorable claim against

Horizon as their claims lacked legal merit, and continued to prosecute their claim despite written

notice that it lacked merit, Horizon is entitled to an award of its fees and costs.

14

## CONCLUSION

For the foregoing reasons, Defendants Horizon Blue Cross Blue Shield of New Jersey and respectfully requests that this Court grant summary judgment in its favor and dismiss Plaintiff's Complaint with prejudice.

<div style="margin-left: 40%;">

**CONNELL FOLEY LLP**
Liberty View
457 Haddonfield Rd., Ste. 230
Cherry Hill, New Jersey 08002
(856) 317-7100

*Attorneys for Defendant*
*Horizon Blue Cross Blue Shield of New*
*Jersey*

BY: _____
        Edward S. Wardell, Esquire
        Matthew A. Baker, Esquire

</div>

DATE:    January 9, 2013

15